**NOT FOR PUBLICATION**

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| EVELYN G.,<br><br>                    Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>                    Defendant. | Civil Action No. 21-15808 (SDW)<br><br>**OPINION**<br><br>December 12, 2022 |

**WIGENTON**, District Judge.

Before this Court is Plaintiff Evelyn G.'s ("Plaintiff")[1] appeal of the final administrative decision of the Commissioner of Social Security ("Commissioner") with respect to Administrative Law Judge Dina R. Loewy's ("ALJ") denial of Plaintiff's claim for disability insurance benefits ("DIB") and supplemental security income ("SSI") under the Social Security Act (the "Act"). This Court has subject matter jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Venue is proper under 42 U.S.C. § 405(g). This appeal is decided without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons set forth below, this Court finds that the ALJ's factual findings are supported by substantial evidence and that her legal determinations are correct. Therefore, the Commissioner's decision is **AFFIRMED**.

---

[1] Plaintiff is identified only by her first name and last initial in this opinion, pursuant to Chief District Judge Freda Wolfson's Standing Order 2021-10, issued on October 1, 2021, *available at* https://www.njd.uscourts.gov/sites/njd/files/SO21-10.pdf.

## I.     PROCEDURAL AND FACTUAL HISTORY

### A.  Procedural History

On September 5, 2017, October 11, 2017, and October 23, 2017, Plaintiff filed concurrent applications for DIB and SSI.  (D.E. 7 (Administrative Record ("R.")) at 42, 45, 496–513.)  In her applications, Plaintiff alleged disability beginning June 2, 2017, due to cardiac arrhythmias, anxiety, emphysema, and depression.  (*See* R. 99, 103, 496–513.)  The state agency denied Plaintiff's claims initially on February 2, 2018, and upon reconsideration on April 27, 2018.  (R. 98–159.)  Plaintiff received a hearing before ALJ Loewy on June 13, 2019 (R. 68–95), and the ALJ issued her opinion on January 7, 2020.  (R. 42–60.)  The Appeals Council denied the request for review on July 8, 2021, making the ALJ's decision the final decision of the Commissioner of Social Security.  (R. 1–10.)  Plaintiff subsequently filed the instant appeal in this Court.  (D.E. 1.)  The parties completed timely briefing and Plaintiff filed a reply.  (D.E. 12, 15, 16.)

### B.  Factual History

Plaintiff was born on May 10, 1970 (R. 72, 550), and has a twelfth-grade education.  (R. 92, 544.)  Plaintiff previously worked as an information clerk at the front desk of an optometry office and an administrative clerk at car dealership.  (R. 92–93, 544.)  Plaintiff alleges she stopped working on June 2, 2017 (the "alleged onset date") due to a variety of physical and mental health impairments.  (R. 506, 543.)  The following is a summary of the medical evidence in the record.

#### i.  Physical Impairments

Prior to Plaintiff's alleged onset date, Plaintiff was evaluated for supraventricular tachycardia with ablation in 2001 but did not follow up with a cardiologist for this condition until 2017.  (R. 761.)  In May 2017, Dr. Alan Burghauser, M.D., diagnosed Plaintiff with "mild persistent asthma, uncomplicated," "panlobular emphysema," and "unspecified" insomnia and

gave her medication for treatment. (R. 1160.) Two months later in July 2017, Plaintiff reported to Dr. Alexander Matthew, M.D., with complaints of heart palpitations.[2] (R. 49, 761–65, 977.) Dr. Matthew diagnosed Plaintiff with "palpitations, supraventricular tachycardia, and [unspecified] emphysema." (R. 763.) On November 25, 2017, Plaintiff sought emergency care treatment at Jersey City Medical Center due to a "productive cough," "chest tightness" and "palpitations." (R. 1031.) It was noted that Plaintiff was tachycardic. (*Id.*) Plaintiff was diagnosed with "palpitations, dehydration, and sinusitis," and discharged within 24 hours. (R. 1032.)

On December 22, 2017, Plaintiff returned to Jersey City Medical Center for emergency treatment after having her first seizure. (R. 1043–44.) Plaintiff's mother, with whom she was living, reported that Plaintiff was "shaking, fell on the ground, started foaming at the mouth, and her eyes were rolled back." (R. 1042–43.) Neurologists believed it was a withdrawal seizure caused by Plaintiff abruptly stopping her Xanax and Ambien medication. (R. 1048.) She had some trauma to her head, but a CT scan and neurological examination of Plaintiff revealed unremarkable and normal findings. (R. 1043.) Plaintiff was discharged in stable condition within 24 hours. (R. 1052.)

On January 16, 2018, Plaintiff received an internal medicine consultative evaluation from Dr. Juan Carlos Cornejo, M.D. (R. 804–19.) Dr. Cornejo's cardiac and pulmonary examinations revealed that Plaintiff "did not appear in acute cardiac or respiratory distress." (R. 808.) Dr.

---

[2] The ALJ's opinion incorrectly refers to heart palpitations as "palpations." For example, the decision states: "In late November 2017, the claimant sought emergency care treatment at Jersey City Medical Center due to a complaint of a productive cough with green sputum progressing to chest tightness along with palpations." (R. 49.) In the Record, however, Jersey City Medical Center describes Plaintiff's symptoms as "chest tightness and . . . palpitations." (R. 1031.) Given the context, this Court will use the term "palpitations." *See Palpitation*, Merriam-Webster, https://www.merriam-webster.com/dictionary/palpitation (last visited Nov. 30, 2022) ("an abnormally rapid or irregular beating of the heart such as that caused by panic, arrhythmia, or strenuous physical exercise"); *see also Palpate*, Merriam-Webster, https://www.merriam-webster.com/dictionary/palpate (last visited Nov. 30, 2022) ("to examine by touch especially medically").

Cornejo noted that Plaintiff's effort during testing was poor, and tests indicated "severe obstructive lung pattern," "sinus arrhythmia," and a "heart rate [of] 83." (*Id.*) In March 2018, Plaintiff received an EEG to monitor for any seizures. (R. 1415–18.) The results of the EEG were "normal" and "unremarkable," and Plaintiff reported no new episodes, but she was advised to "avoid things that could precipitate seizures." (R. 1413, 1418.) At physical examinations in June and August 2018, Plaintiff was found to have clear lung sounds with no rales and a regular heart rhythm. (R. 967–69, 987–89.) Plaintiff was diagnosed with unspecified chronic fatigue, headache, and primary insomnia. (R. 969.) In December 2018, Plaintiff returned to Dr. Matthew for a follow up evaluation regarding her palpitations and syncope. (R. 977–80.) Dr. Matthew found that Plaintiff was "doing well overall," even though she had "palpitations with stress." (R. 977.) Based on his examination, Dr. Matthew continued Plaintiff on medication for her palpitations. (R. 980.)

On January 21, 2019, Plaintiff sought emergency treatment at Bayonne Medical Center, complaining of "headache[,] dizziness[,] and palpitations." (R. 1358.) An EKG revealed a "sinus tachycardia at 130 bpm." (R. 1362.) Plaintiff stated that her headache went away after Tylenol and Toradol medication treatment, and she was discharged from the emergency department within 24 hours. (R. 1362–63.) One month later during a medication management evaluation, Plaintiff was diagnosed by Dr. Rosa Matos Neno, M.D., with "mixed hyperlipidemia" and "chest pain." (R. 1095.) Plaintiff returned to Dr. Neno in mid-April 2019 to report that her hands often shook, causing her to drop things, with the left hand reported worse than the right. (R. 1091.) Dr. Neno found that Plaintiff's physical examination was within normal limits, and diagnosed Plaintiff with an unspecified tremor, other amnesia, and primary insomnia. (R. 1092.)

Plaintiff returned to Bayonne Medical Center on May 1, 2019, after her sister reported Plaintiff having a seizure at the supermarket. (R. 1371.) A neurological examination and CT scan

revealed normal results, but Plaintiff's EKG showed tachycardia with a heart rate of 140 bpm.  (R. 1374–75.)  Plaintiff was advised to stop taking medications that lower her seizure threshold.  (R. 1384.)  In June and July 2019, neurological and physical examinations revealed that Plaintiff's result were normal.  (R. 1290, 1408.)  Plaintiff's medication was refilled, and she was advised to follow up with neurology and psychiatry regarding her convulsions and mental impairments.  (R. 1290–92.)

### ii.  Mental Impairments

Prior to her alleged disability onset date, Plaintiff was evaluated and treated for an anxiety disorder and insomnia.  (R. 751–60.)  In June 2017, Plaintiff alleged to Dr. Matthew that she was experiencing "intermittent palpitations associated with panic attacks."  (R. 761.)  At the time, the Record indicates that Plaintiff was taking Ativan for her anxiety and Ambien for her insomnia. (R. 762.)

In January 2018, Plaintiff received psychiatric consultative examinations, in which Plaintiff was reportedly cooperative with normal mood and affect.  (R. 799.)  In addition, it was observed that Plaintiff's "attention and concentration were normal," but her "recent and remote memory skills were mildly impaired possibly due to depression."  (R. 800.)  Plaintiff was diagnosed with generalized anxiety disorder and adjustment disorder with depressive mood.  (*Id.*)

In late April 2018, Dr. George Kruse, M.D., evaluated Plaintiff regarding her psychiatric symptoms.  (R. 995.)  Plaintiff reported to Dr. Kruse that she had a long history of anxiety and chronic insomnia, and took medication for her anxiety.  (*Id.*)  Additionally, she stated that her "anxiety and insomnia continue[d] to be problems despite these medications, and her mood ha[d] become increasingly dysphoric/depressed and she had been quick to anger/irritate."  (*Id.*)  Dr. Kruse diagnosed Plaintiff with recurrent major depressive disorder, generalized anxiety disorder,

and primary insomnia.  (R. 998.)  Dr. Kruse also started Plaintiff on medication for her mood and anxiety symptoms.  (*Id.*)  Plaintiff returned to Dr. Kruse throughout 2018 for follow-up visits, where he increased Plaintiff's medication dosage after she complained of persisting mood, sleep, and stress issues.  (*See* R. 974–76, 981–86.)

In May 2019, Plaintiff presented to Advanced Practice Nurse Sylvana Garcia, who diagnosed Plaintiff with bipolar disorder with depression along with insomnia.  (R. 1201.)  Nurse Garcia started Plaintiff on Trazadone along with her prescribed Seroquel, Trileptal, and Zoloft. (R. 1202.)  Plaintiff returned to Nurse Garcia later in 2019, complaining of increased mood swings, irritability, anxiety, and depression.  (R. 1219, 1222.)  Nurse Garcia adjusted Plaintiff's medication accordingly, and Plaintiff reported decreased mood swings, increased mood stability, and feeling well on medication.  (R. 1335.)

### iii.  State Agency Physicians' Findings

In 2018, non-examining state agency consultants reviewed the record and found, *inter alia*, that due to Plaintiff's mental impairments, she was moderately limited in her ability to interact with others; concentrate, persist, or maintain pace; and adapt or manage herself.  (*See* R. 104–111, 119–126, 135–42, 150–57.)  It was noted that Plaintiff's mental impairments are somewhat well controlled with prescribed treatment methods such as medication and psychotherapy treatment. (R. 104, 120, 134, 149.)   The state agency consultants also found that Plaintiff's physical impairments cause some exertional, postural, and environmental limitations.  (R. 104, 106–07, 123–24, 136–39, 151–54.)  Nevertheless, the state agency physicians' findings indicate that the symptoms causing Plaintiff's limitations were stable and relatively well controlled with prescribed treatment methods.  (*See* R. 104–111, 119–126, 135–42, 150–57.)

### C.  Hearing Testimony

At the administrative hearing on June 13, 2019, Plaintiff was represented by counsel.  (R. 68–95.)  ALJ Loewy heard testimony from Plaintiff and an impartial vocational expert, Jack Patton ("VE Patton").  (*See generally id.*)

Plaintiff testified that she cannot "go out alone" due to her seizures (R. 77), and she can no longer work because she is "severely depressed."  (R. 80.)  Plaintiff also testified to her ongoing medication treatments to address her impairments.  (R. 80–81.)  Plaintiff claimed that she experiences panic attacks, heart palpitations, insomnia, anxiety, depression, difficulty with memory, and headaches, and has side effects related to her medications.  (R. 82–90.)

VE Patton testified that an individual with Plaintiff's vocational background and residual functional capacity ("RFC"), as assessed by ALJ Loewy, would not be capable of working Plaintiff's previous jobs an information clerk or administrative clerk.  (R. 93.)  VE Patton testified that there were unskilled jobs at the light exertional level in the national economy that a person with Plaintiff's age, education, work experience, and RFC could perform such as a garment sorter, mail clerk, and marker.  (R. 93–94.)

## II.   <u>LEGAL STANDARD</u>

### A.  Standard of Review

In Social Security appeals, this Court has plenary review of the legal issues decided by the Commissioner.  *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000).  However, this Court's review of the ALJ's factual findings is limited to determining whether there is substantial evidence to support those conclusions.  *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999).

Substantial evidence "does not mean a large or considerable amount of evidence, but rather 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"

*Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  Thus, substantial evidence is "less than a preponderance of the evidence, but 'more than a mere scintilla.'" *Bailey v. Comm'r of Soc. Sec*., 354 F. App'x. 613, 616 (3d Cir. 2009) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)).  Importantly, "[t]his standard is not met if the Commissioner 'ignores, or fails to resolve, a conflict created by countervailing evidence.'" *Bailey*, 354 F. App'x. at 616 (quoting *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)).  However, if the factual record is adequately developed, "the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." *Daniels v. Astrue*, No. 4:08-cv-1676, 2009 WL 1011587, at *2 (M.D. Pa. Apr. 15, 2009) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966).  "The ALJ's decision may not be set aside merely because [a reviewing court] would have reached a different decision." *Cruz v. Comm'r of Soc. Sec*., 244 F. App'x. 475, 479 (3d Cir. 2007) (citing *Hartranft*, 181 F.3d at 360).  This Court is required to give substantial weight and deference to the ALJ's findings.  *See Scott v. Astrue*, 297 F. App'x. 126, 128 (3d Cir. 2008). Nonetheless, "where there is conflicting evidence, the ALJ must explain which evidence he [or she] accepts and which he [or she] rejects, and the reasons for that determination." *Cruz*, 244 F. App'x. at 479 (citing *Hargenrader v. Califano*, 575 F.2d 434, 437 (3d Cir. 1978)).

In considering an appeal from a denial of benefits, remand is appropriate "where relevant, probative and available evidence was not explicitly weighed in arriving at a decision on the plaintiff's claim for disability benefits." *Dobrowolsky v. Califano*, 606 F.2d 403, 407 (3d Cir. 1979) (quotation marks omitted) (quoting *Saldana v. Weinberger*, 421 F. Supp. 1127, 1131 (E.D. Pa. 1976)).  A decision to award benefits without remand "should be made only when the administrative record of the case has been fully developed and when substantial evidence on the

record as a whole indicates that the claimant is disabled and entitled to benefits." *Podedworny v. Harris*, 745 F.2d 210, 221–22 (3d Cir. 1984).

**B. The Five-Step Disability Test**

A claimant's eligibility for social security benefits is governed by 42 U.S.C. § 1382.  A claimant will be considered disabled under the Act if the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" lasting continuously for at least twelve months.  42 U.S.C. § 423(d)(1)(A).  The impairment must be severe enough to render the claimant "not only unable to do [her] previous work but [unable], considering [her] age, education, and work experience, [to] engage in any kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A).  A claimant must show that the "medical signs and findings" related to his or her ailment have been "established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged . . . ."  42 U.S.C. § 423(d)(5)(A).

To make a disability determination, the ALJ follows a five-step, sequential analysis.  20 C.F.R. §§ 404.1520(a), 416.920(a); *see also Cruz*, 244 F. App'x at 480.  If the ALJ determines at any step that a claimant is or is not disabled, the ALJ does not proceed to the next step.  20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

Step one requires the ALJ to determine whether the claimant is engaging in substantial gainful activity ("SGA").  20 C.F.R. §§ 404.1520(a)(4)(i), 404.1571–76, 416.920(a)(4)(i).  SGA is defined as work that "[i]nvolves doing significant and productive physical or mental duties . . . for pay or profit."  20 C.F.R. §§ 404.1510, 416.910.  If the claimant engages in SGA, the claimant

is not disabled for purposes of receiving social security benefits, regardless of the severity of the claimant's impairments. *See* 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not engaging in SGA, the ALJ proceeds to step two.

At step two, the ALJ determines whether the claimant suffers from a severe impairment or combination of impairments that meets the duration requirement found in Sections 404.1509 and 416.909. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or a combination of impairments is not severe when medical and other evidence establishes only a slight abnormality or combination of abnormalities that would have a minimal effect on the claimant's ability to work. 20 C.F.R. §§ 404.1521, 416.921; Social Security Rule ("SSR") 85-28, 96-3p, 96-4p. An impairment or a combination of impairments is severe when it significantly limits the claimant's "physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c). If a severe impairment or combination of impairments is not found, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the ALJ finds a severe impairment or combination of impairments, the ALJ then proceeds to step three.

At step three, the ALJ determines whether the claimant's impairment or combination of impairments is equal to, or exceeds, one of those included in the Listing of Impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If an impairment or combination of impairments meets the statutory criteria of a listed impairment as well as the duration requirement, the claimant is disabled and entitled to benefits. 20 C.F.R. §§ 404.1520(d), 416.920(d). If, however, the claimant's impairment or combination of impairments does not meet the severity of the listed impairment, or if the duration is insufficient, the ALJ proceeds to the next step.

Before undergoing the analysis in step four, the ALJ must determine the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(a), 404.1520(e), 416.920(a), 416.920(e). RFC is the claimant's ability to do physical and mental work activities on a sustained basis despite limitations from his or her impairments. 20 C.F.R. §§ 404.1545, 416.945. The ALJ considers all impairments in this analysis, not just those deemed severe. 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2); SSR 96-8p. After determining a claimant's RFC, step four then requires the ALJ to determine whether the claimant has the RFC to perform the requirements of his or her past relevant work. 20 C.F.R. §§ 404.1520(e)–(f), 416.920(e)–(f). If the claimant can perform his or her past relevant work, he or she will not be found disabled under the Act. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f). If the claimant is unable to resume his or her past work, the disability evaluation proceeds to the fifth and final step.

At step five, the ALJ must determine whether the claimant is able to do any other work, considering his or her RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). Unlike in the first four steps of the analysis, where the claimant bears the burden of persuasion, at step five the Social Security Administration ("SSA") is "responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that [the claimant] can do, given [the claimant's RFC] and vocational factors." 20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2). If the claimant is unable to do any other SGA, he or she is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

## III.   DISCUSSION

### A.  The ALJ's Decision

On January 7, 2020, ALJ Loewy issued a decision concluding that Plaintiff was not disabled from June 2, 2017, the alleged onset date, through the date of the decision. (R. 60.) At

step one, the ALJ found that Plaintiff had not engaged in any SGA since the alleged onset date. (R. 45.)  At step two, the ALJ found that Plaintiff had the following severe impairments: asthma, supraventricular tachycardia, anxiety disorder, seizures, and major depressive disorder.  (R. 45.)

At step three, the ALJ concluded that Plaintiff's impairments, individually and in combination, did not meet or medically equal the severity of any listing.  (R. 45–46.)  Plaintiff's impairments did not meet the requirements of Listing 3.03, asthma.  (R. 45.)[3]  The ALJ also found that Plaintiff did not satisfy the conditions under Listing 4.05, recurrent arrhythmia, because Plaintiff did not have recurrent arrhythmias "resulting in uncontrolled, recurrent episodes of cardiac syncope or near syncope."  (R. 46.)[4]

ALJ Loewy considered the severity of Plaintiff's mental impairments pursuant to Listings 12.04 and 12.06.[5]  The ALJ found that Plaintiff had moderate limitations in "understanding, remembering, or applying information"; "interacting with others"; "ability to concentrate, persist, or maintain pace"; and "ability to adapt or manage herself," but her mental impairments did not satisfy the applicable mental disorder listings.  (R. 46–47.)

Assessing Plaintiff's RFC, the ALJ found that Plaintiff

> has the residual functional capacity to perform light work . . . except this individual can occasionally climb ramps and stairs but generally just a few steps, rarely full flights.  This individual can never climb ladders, ropes or scaffolds.  This individual can occasionally balance, stoop, kneel or crouch but can never crawl.  This individual must avoid exposure to extreme temperatures, wetness and humidity.

---

[3] A finding of asthma requires a forced expiratory volume ("FEV")$_1$ of less than or equal to the value in Table VI-A or VI-B of Listing 3.03 measured within the same 12-month period as the hospitalizations in 3.03B.  20 C.F.R. Pt. 404, Subpt. P, App. 1 § 3.03; *see also id.* § 3.00(C)(10) (defining FEV$_1$).  Additionally, a finding of asthma requires three hospitalizations within a 12-month period and at least 30 days apart.  *Id.*

[4] Listing 4.05 applies to recurrent arrhythmias that are not related to reversible causes, "resulting in uncontrolled, recurrent episodes of cardiac syncope or near syncope," despite prescribed treatment and documented testing.  20 C.F.R. Pt. 404, Subpt. P, App. 1 § 4.05.

[5] Listing 12.04 describes the requirements for depressive, bipolar, and related mental disorders.  20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.04.  Listing 12.06 describes the requirements for anxiety and obsessive-compulsive disorders. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.06.

> This individual must avoid even moderate exposure to pulmonary irritants.  This
> individual must avoid all exposure to hazardous machinery, unprotected heights
> and operational control of moving machinery.  This individual is limited to simple
> routine tasks.  This individual is limited to occasional contact with the public or
> supervisors.

(R. 47.)  At step four, the ALJ found that Plaintiff was unable to perform her past relevant work

as an information clerk or administrative clerk.  (R. 58.)  At step five, relying on VE Patton's

testimony, the ALJ found that Plaintiff could perform work that existed in significant numbers in

the national economy such as a garment sorter, mail clerk, or marker.  (R. 59–60.)  ALJ Loewy

therefore concluded that Plaintiff was not disabled under the Act during the relevant period.  (R.

60.)

## B.  Analysis

On appeal, Plaintiff seeks reversal or remand of the Commissioner's decision.  (*See* D.E.

12 at 39; D.E. 16 at 7.)  Plaintiff argues that the ALJ improperly evaluated or discounted the

medical evidence and failed to properly evaluate Plaintiff's RFC, and asks this Court to review the

record. (D.E. 12 at 23–39.)  In particular, Plaintiff challenges the ALJ's findings that (1) Plaintiff's

supraventricular tachycardia did not satisfy the definition of Listing 4.05 (recurrent arrhythmias);

(2) her mental impairments did not satisfy Listings 12.04 (depressive, bipolar, and related

disorders) or 12.06 (anxiety and obsessive-compulsive disorders); (3) some of plaintiff's claims

about her history of seizures were unsupported by the record; (4) she engaged in SGA; and (5) she

had the RFC to engage in some light work.  (*Id*. at 25–39.)[6]  This Court considers the arguments

in turn and finds each unpersuasive.

---

[6] Plaintiff also argues that she met the requirements for Listing 14.04, systemic sclerosis (scleroderma), which appears
to be a drafting error given that none of Plaintiff's medical records discuss this autoimmune disease.  (D.E. 12 at 31.)

### i. Listings Analysis

Plaintiff contends that the ALJ improperly evaluated or discounted the medical evidence at step three, in finding that her impairments did not meet or equal any of the listings, and asks this Court to review the record.  (D.E. 12 at 23–37; D.E. 16 at 1–7.)[7]  At step three, the ALJ assesses the medical severity of a claimant's impairment or combination of impairments.  20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  A claimant "must meet *all* of the specified medical criteria" under the listings to qualify for benefits.  *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).  Further, "[a]n impairment that manifests only some of those criteria, no matter how severely, does not qualify." (*Id.*)  Plaintiff has not met her burden of producing objective evidence to support her claim that she met *all* criteria set forth in Listings 4.05, 12.04, or 12.06, and the ALJ's conclusions at step three are supported by substantial evidence.  (R. 45–51.)

The ALJ properly evaluated Plaintiff's medical evidence concerning her supraventricular tachycardia condition and correctly found that it did not meet the criteria of Listing 4.05 because, even assuming Plaintiff had "recurrent arrhythmias," there is insufficient evidence to support a finding that these arrhythmias resulted in "uncontrolled, *recurrent* episodes of cardiac syncope or near syncope."  20 C.F.R. Pt. 404, Subpt. P, App. 1 § 4.05 (emphasis added).[8]  (*See* R. 45–46.) Syncope is defined in the regulations as "a loss of consciousness or a faint" and "near syncope" is "a period of altered consciousness," and "not merely a feeling of light-headedness, momentary weakness, or dizziness."  20 C.F.R. Pt. 404, Subpt. P, App. 1 § 4.00(F)(3)(b).  Plaintiff asserts that she "has been suffering from arrhythmias since at least 1995" (D.E. 16 at 2), and argues that she meets the criteria for Listing 4.05 because she had recurrent arrythmias for many years (D.E. 12

---

[7] Plaintiff does not challenge the ALJ's finding that her asthma did not meet the criteria for Listing 3.03.  (*See* R. 45.)

[8] The regulations explicitly state that tachycardia is a type of arrhythmia.  20 C.F.R. Pt. 404, Subpt. P, App. 1 § 4.00(F)(1).

at 25–27).  However, Plaintiff does not point to record evidence linking her tachycardia to recurrent episodes of loss of consciousness or altered consciousness.  Accordingly, she fails to demonstrate any error in the ALJ's finding that her cardiac condition did not satisfy the criteria for Listing 4.05. *See Sullivan*, 493 U.S. at 530.

Substantial evidence also supports the ALJ's finding that Plaintiff did not meet or equal the criteria of Listings 12.04 and 12.06 because, even assuming her mental health conditions satisfied the "A" criteria of these Listings, she failed to demonstrate that either (1) her mental impairments resulted in at least one "extreme" or two "marked" limitations in mental functioning, as necessary to satisfy the "B" criteria, or (2) that she had a "minimal capacity to adapt to changes in [her] environment or to demands that are not already part of [her] daily life," as necessary to satisfy the "C" criteria. 20 C.F.R. Pt. 404, Subpt. P, App. 1 §§ 12.04, 12.06 (stating that these Listings are satisfied by "A and B, or A and C").  (*See* R. 46–47.)

The "B" criteria are satisfied by showing one "extreme" or two "marked" limitations in the following four areas of mental functioning: (1) understanding, remembering, and applying information; (2) interacting with others; (3) the ability to concentrate, persist, or maintain pace; and (4) adapting or managing oneself.  20 C.F.R., Pt. 404, Subpt. P., App. 1, §§ 12.04(B), 12.06(B). Plaintiff does not argue that she had any extreme limitations, but argues that she demonstrated marked limitations.  (D.E. 12 at 2–3, 29–32.)  A "marked" limitation means that a claimant's "functioning in this area independently, appropriately, effectively, and on a sustained basis is *seriously* limited." 20 C.F.R. Pt. 404, Subpt. P, App. 1 §§ 12.00(F)(2)(d) (emphasis added).  ALJ Loewy found that Plaintiff was mildly limited in understanding, remembering, or applying information; moderately limited in interacting with others; moderately limited in concentrating, persisting, or maintaining pace; and moderately limited in adapting and managing oneself.  (R.

46–47.)   The ALJ noted that Plaintiff is able to "go to doctor's appointments and take medications;" "spend time with family, deal appropriately with authority, and live with others;" "watch television and handle her own medical care;" and "have appropriate grooming and hygiene, no problem getting along well with providers and staff, and no problems with temper control." (*Id.*)  The ALJ's assessment was consistent with the medical opinions of Drs. Kruse and Neno, as well as the state agency consultants, who found Plaintiff had no more than moderate limitations in these areas.  (R. 54, 98–127, 1083–88, 1169–73.)  Plaintiff refers to the opinion of Dr. Paul Hriso, which found that Plaintiff had marked limitations in these areas.  (*See* D.E. 12 at 2–3, 29.) However, the ALJ considered this opinion, along with the other medical opinions of record, and explained her reasons for finding it not persuasive (R. 55), and this Court is "not permitted to re-weigh the evidence or impose [its] own factual determinations."  *See Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011).  Substantial evidence supports the ALJ's finding that Plaintiff's impairments did not cause at least two "marked" limitations or one "extreme" limitation in functioning, and the ALJ reasonably determined that the "B" criteria of Listings 12.04 and 12.06 were not satisfied.  (R. 47.)

The "C" criteria are satisfied by showing a two-year history of a mental disorder and *both* (1) ongoing medical treatment, mental health therapy, or a highly structured setting, and (2) "[m]arginal adjustment, that is, [a] minimal capacity to adapt to changes in [one's] environment or to demands that are not already part of [one's] daily life."  20 C.F.R. Pt. 404, Subpt. P, App. 1 §§ 12.04, 12.06.  This requires a claimant to show that her "adaptation to the requirements of daily life is fragile" and to present "evidence show[ing] that changes or increased demands have led to exacerbation of [her] symptoms and signs and to deterioration in [her] functioning; for example, [she has] become unable to function outside of [her] home or a more restrictive setting, without

16

substantial psychosocial supports." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 4.00(G)(2)(c). Plaintiff correctly notes that the ALJ erred in considering the lack of a need for a highly structured setting to be dispositive, given that that is only one alternative to satisfy the first element. (*See* R. 47; D.E. 12 at 31.) However, Plaintiff fails to point to record evidence showing that she had only a minimal capacity to adapt to her environment, as necessary to satisfy the second element, so this Court will affirm on that alternative basis. (*See* R. 47.)

In sum, substantial evidence supports the ALJ's evaluation of step three of the sequential evaluation process. Although Plaintiff argues that the ALJ did not provide adequate explanation of her step three finding, the Third Circuit has affirmed that this type of analysis is sufficient. *See Johnson v. Comm'r of Soc. Sec.*, 398 F. App'x 727, 734 (3d Cir. 2010) (affirming that ALJ's step three finding where the ALJ found the plaintiff did not have an "impairment or combination of impairments that met or medically equaled any of the lifted impairments," cited the relevant listings, and explained why the impairments did not meet those listings (alterations omitted)).

### ii. Evaluation of Other Medical Evidence

Plaintiff's contentions that the ALJ "dismisse[d]" her seizure disorder [as] unsupported by the record," and that the ALJ found she was engaged in substantial gainful activity, are based on a misreading of the ALJ's opinion. (D.E. 34–36.) The ALJ did not dismiss Plaintiff's seizure disorder. The ALJ correctly acknowledged that Plaintiff had seizures and considered the "risk of a potential seizure episode" in assessing her RFC, and correctly found no support in the record for Plaintiff's claim that she had three seizures in one day in May 2019. (R. 45, 48, 51, 54.) Plaintiff's hospital records from May 2019 only state that she reported one seizure "prior to arrival" in the hospital on May 1, 2019, and do not corroborate Plaintiff's claim that she had two more seizures while hospitalized. (R. 1371.) To the contrary, her discharge notes state that Plaintiff had "no

seizure activity during [her] hospital course." (R. 1384.) Plaintiff's suggestion that the ALJ improperly considered her ability to engage in passive activities like riding in a car was "substantial gainful activity" is also unfounded: the ALJ found at step one that Plaintiff had *not* engaged in SGA since her alleged onset date, and appropriately discussed these activities among Plaintiff's "activities of daily living." (R. 45, 54.) Accordingly, neither of these arguments warrant remand. *See Dobrowolsky*, 606 F.2d 407.

### iii. The RFC Determination

Plaintiff asserts that the ALJ failed to properly evaluate her RFC, and that the ALJ's RFC assessment of light work is not supported by substantial evidence. (D.E. 12 at 37–39; 16 at 5.) In particular, Plaintiff argues that the limitation for "occasional climbing of ramps and stairs, but generally just a few steps" precludes light work since "[P]laintiff would not be able to perform all or substantially all of the exertional demands of light work." (D.E. 12 at 39.) However, the ALJ did not find that Plaintiff could perform *all* forms of light work; the ALJ found that Plaintiff could perform a limited range of light work, with a long list of exceptions. (R. 47.) Plaintiff does not disagree with any of the ALJ's specific findings, and this Court is not persuaded by her argument that she cannot do *any* light work merely because of these exceptions. (D.E. 12 at 37–39.) Notably, Plaintiff fails to discuss the three occupations identified by VE Patton or to dispute the ALJ's finding, based on VE Patton's testimony and other substantial evidence of record, that Plaintiff can perform the requirements of those occupations.[9] (*Id.*; see R. 59–60; 93–94.) In assessing Plaintiff's RFC, the ALJ provided a sufficient narrative discussion of Plaintiff's entire

---

[9] Plaintiff's claim that the ALJ "failed to consider the medical evidence that Plaintiff would be off task due to her seizure disorder and depression and absent from work" is without merit. (D.E. 12 at 39.) Plaintiff may disagree with the ALJ's assessment of the evidence, but the ALJ took this evidence into account and explained her reasons for not finding it persuasive. (*See* R. 55–58.)

medical record.  (See generally R. 42–60.)  Accordingly, Plaintiff presents this Court with no basis to remand or reverse.

 Reviewing the ALJ's decision and the medical record as a whole, it is clear that there is substantial evidence— *i.e.*, more than a mere scintilla of evidence—to support the ALJ's decision that Plaintiff can perform a limited range of light exertional work, including the jobs that the VE identified.  This Court will therefore affirm.

IV. **CONCLUSION**

 For the foregoing reasons, this Court finds that ALJ Loewy's factual findings were supported by substantial credible evidence in the record and that her legal determinations were correct.  The Commissioner's determination is therefore **AFFIRMED**.  An appropriate order follows.

s/ *Susan D. Wigenton*
**SUSAN D. WIGENTON**
**UNITED STATES DISTRICT JUDGE**

Orig: Clerk
cc:  Parties